Good morning. My name is Vicki Marol Buchanan. I'm here on behalf of Maria Sanchez. I'd like to reserve a couple of minutes. It doesn't look like that's worked out too well. At any rate, this case was, the original indictment in this particular case was all about fraudulent loans. Loans we've all become very familiar with. They're called liar loans. These were loans where millions of people entered into them and they were promoted by all sorts of people and it is a crime and Ms. Sanchez was in fact indicted and convicted of that particular crime. The fraud involved in misstating income on a federal loan. However, after this court decided United States v. Blixt, which has nothing to do with mortgage fraud. It has to do with actually embezzlement and signing forged checks. The court ruled that a signature could be a means of identification under the aggravated identity statute. And therefore, the government found that on a couple of the documents in this case, the signatures did not actually belong to J.M. and to S.T. in some of the blanks on the standard forms did not belong to these two people. And because of that, the government showed, and we don't have any evidence by the way that whether Ms. Sanchez signed those on their behalf or if anyone else did or even if she didn't realize it was her signatures, but be that as it may, that's off to the side. Because of those signatures, the government was able to add two new counts to the indictment and those two counts were for aggravated identity theft. And because of the aggravated identity theft revolving around a signature on an application, Ms. Sanchez was subject to two years mandatory minimum prison sentence. There was no basis to depart. The government couldn't help depart. It was a mandatory sentence. And because of this, the signatures in these particular blanks on the documents were inconsequential to the crime that was being committed here. They were totally inconsequential. If you look at the form, if you look at the standard form that's involved in these kinds of real estate transactions, at the top of it in very small language it says that someone is taking this, is interviewing the person involved. And at the bottom, they are the scrivener basically. They're the person who's taking down the information. It doesn't say that they certify that the information is true or correct. It doesn't certify that I don't think materiality is an issue on this appeal, but I thought the reason for doing it this way was that it would have looked suspicious since nominally at least the property was being, the mortgage was being sought for her sister. And it would have, it might have raised questions that the interviewer who was putting down the information was also the sister of the person who was applying for the mortgage. But that's not, you're not arguing materiality here. I'm just pointing out. I'm sympathetic to the notion that the government should not have just run after Blixt and thrown in these two counts and tied the hands of the district judge who could have given a two year sentence if he thought it was appropriate. So they, you know, Blixt is decided and they just, applying a kitchen sink approach, they just go and file a superseding indictment adding those two counts. I'm sympathetic to it, but there's a, you know, the issue of law here doesn't seem to me that troublesome. The materiality? Well, you're not even arguing materiality in your brief. No, but I don't think that this, I think that relying on just a signature is way beyond the realm of the statute and leads to actually an absurd. You make the argument in your brief, Blixt decided that a signature is one way of using another person's name and can be identity theft. And you, in part of your, maybe in your reply brief, you just seem to be re-arguing Blixt. It did say that it was a means of identification, but that doesn't mean that a signature is a means of identification always and that every time a signature is used in any way, shape, or form in conjunction with another underlying crime, in particular wire fraud and money laundering, which are pretty broad crimes to begin with. Blixt doesn't say that. Blixt wasn't thinking. I don't think the court thought in Blixt of all the permutations that could be used. I'm very sympathetic to the argument, but I've got the statute. And the statute says, knowingly transfers, possesses, or uses without lawful authority a means of identification, a signature, of another person with intent to commit or to aid or abet or in connection with any unlawful activity that constitutes a violation of federal law or that constitutes a felony under applicable state or local law. As soon as we got Blixt, this statutory language is breathtakingly broad. And I'm very sympathetic to your argument. I think the statute might not have really intended to say that if the drafters had understood that it was going to apply to this signature in this circumstance. But I'm stuck with Blixt, and I'm stuck with the language. You know, that is indeed a very troubling situation because it is very clear. It's textually extremely clear. So in preparing for this argument, I just, you know, I went back through all my law school things and permutations. And when you do have an absurd result like this, the fact that Ms. Sanchez is going to spend two mandatory years in prison for something that nobody else is spending time just because she used a signature, then you have to look in the context of the statute. And also I gave in my opening brief several of the contexts of the statutes. And in reading through this this weekend, a phrase came up to me which seems to fit and seems to kind of define the parameters in which Blixt can be perfectly acceptable and can be really good law. And that statement is that the threat from identity fraud, identity theft and identity fraud is a threat to personal security and a threat to national security. And I really think that's the heart of the aggravated identity theft statute. In Blixt, it was quite clear it was a threat to personal security. It was a threat to the company whose Mrs. Blixt signed the checks. In this case, there was no threat to the personal security of either JM or ST. Isn't it quite clear that one of the purposes of this statute is the grief that's caused to a person whose name is used regardless of whether that person is an immediate victim of a fraud? I mean, in the case involving, there's a case, I don't have it, I think the United States versus Masial Alcala in which the identity of a dead person was used to try and get a passport. And we said that the fact that it was a dead person who would not suffer any embarrassment or anything, it was enough because it's possible, even though it was clear in that case it didn't happen, it's possible that a dead person's estate might have to deal with the consequences of the impermissible use of that person's name. And so you can't get around the fact that one of the real problems here with identity theft is the effect that it has on the person whose identity is stolen to have to clear their names, so to speak. And that's true whether or not that person has actually been defrauded or whether the identity theft was used to defraud another person. I don't see how you get around it. Well, I think that's what this statement says. It goes to the personal security. Perhaps in that case, when you're talking about the passport, that may very well go to national security because you're using some fake name to get access to the country. So that might be the prong of the case that goes to national security. The reason that the Ninth Circuit gave in that case for saying that it applied even where the identity of the dead person was used was because of the effect that it could have on the estate and that the estate might conceivably be in the position of having to deal with the fallout of the identity theft. Now, in that case, there was actually no evidence that the estate had that, but it was the reason that we held that it even applied to the theft of identity of a dead person. So it doesn't matter, it seems to me, how this was used in the fraud as much as it does that two people who worked in the real estate industry had their names forged and used without their consent and it could have caused problems for them. I guess theoretically that's true. I mean, there are all kinds of, you know, but I think that there's a basis in which to restrict the Blix decision and to narrow the Blix decision. I don't know that those people are going to suffer the same, have any, there's no repercussion that would possibly come back to them on those particular courts. That's true in a lot of cases. I mean, Congress often legislates to deal with a problem and not every case in which the legislation is applied is the evil present. So in the case involving the dead person, nobody suffered. I mean, there was no evidence that the estate somehow suffered, but we looked at it categorically. Congress intended to include, we see no reason to remove from the statute the identity theft simply because you're stealing the identity of the dead person. And that seems to me what's happened here, even if the evil that the conduct was that Congress had in mind really didn't come to fruition in this case. Yeah, it's hard to, it's very hard to argue around it. It just is in remote, extremely absurd and terribly unfair in this particular case. And I'm afraid in many more cases of the prosecution coming forward and charging things that really weren't a crime and nobody ever conceived of at the time of this case. The government didn't charge identity fraud when it started the case. It only did after the Blix decision and came up with aggravated identity fraud in this particular case. And it is, it's, you know, it's extremely troublesome. I think there's only, I think one other jurisdiction in the United States has dealt with this issue in terms of, and has come up with the signature to, and once again it was on a check. But otherwise there is no other jurisdictions have come out and analyzed this particular statute. And hopefully we'll, somewhere along the line this situation can be remedied because certainly there are many instances where people sign checks or sign documents and they never think that it's going to be a federal crime for two years. Including when you're in grade school and you sign your mother's name to something that said you misbehaved at recess. That you might someday be subject to a federal crime. Let's hear from the government. Thank you. Good morning. Why did you seek a superseding indictment and throw in these two counts? You didn't trust the trial judge to give an adequate sentence without having to toss in mandatory minimum sentences. No, Your Honor. First of all, my parents, Nicholas Drutanich, on behalf of the United States, may it please the court to answer Your Honor's question. Blix, the Blix opinion came out approximately three or four months before trial. That trial was subsequently continued. We superseded the indictment because if this case is going to trial and the defendant wants to take it to trial, the government has at its discretion to go to trial with whatever charges it can possibly prove. And in this case, 1028A applied after Blix. It was, it's clear from the Ninth Circuit's opinion in Blix that it applied and therefore we superseded and went to trial. You know, I find in the district court where I sit that every time it becomes clear that a defendant wants to go to trial, the government announces we're returning a superseding indictment. And I say what's the crime, the unwillingness of the defendant to plead? And that's just what you just said. No, Your Honor, if that's what I just said, the court may have misinterpreted.  You want to go before the jury with the charges that are applicable and the charges that you can prove to the jury. And I think after Blix it became clear that we could prove aggregated identity theft. There's such a thing as prosecutorial discretion. And I think in this case, Your Honor, we have a pervasive fraud over several years. This is a defendant who acquired millions of dollars of loan mortgages from multiple different lenders over the course of several years, submitting and falsifying documents. I remember the judge would have had ample discretion to have imposed a sentence of at least two years. Yes, Your Honor. So all you're doing is essentially saying we want to make sure that the judge doesn't give less. I disagree respectfully. I think in this case there was a low-end guideline range of 75 months that the government asked for. The judge agreed with the government's recommendation, excuse me, position, that the guideline range would be at a level 24 with respect to the restitution issue. That kind of folds into that. So the judge did downward depart significantly to two years and one day. He did downwardly depart because he thought that the two years was enough and the two years had to run concurrent to whatever sentence he gave. So he gave two years and a day. But let me, as long as you brought up the restitution issue, I don't know how, from a practical standpoint, how critical it is, but it is raised. The argument was made that the reason that there was even a loss here was because the government had put a lien on the property as a result of criminal conduct by her brother, and that at the time that the government put a lien there was a $125,000 equity, and it wasn't as a result of the commission of the crime that there was a loss to the victim, but because the government had put a lien on the property. And it doesn't seem to me that you adequately address that argument. Yes, Your Honor. I mean, I don't, I think the judge was, the judge, because the judge was determined to downwardly depart on the counts in which he had the discretion, I don't think he was just going through the motions of trying to calculate the guidelines. And, you know, even the case that he relied on said that you rely on the amount of money that was obtained as a result of the fraud, which was far in excess of $172,000. I just don't, what is the answer to the argument? You don't answer either, it seems to me effectively, her argument or the Ninth Circuit case on which he relies, United States v. Taylor. You simply allude to the fact that it was relied on, and you don't answer it. Two points on that, Your Honor. The first is that based on the issues presented in the defendant's brief, as well as the headings in her brief, as well as the last line of her reply, it's the government's position that that's not raised. The merits of the actual restitution order are not raised here on appeal. What the defendant is actually raising is whether or not the court considered under Rule 32 and under Rita whether there was a reasoned decision there. And the merits of the actual restitution order have not been appealed in the government's position. I don't know if she wrote, she discusses this Taylor case, she discusses the whole thing. I didn't read her brief to suggest that this wasn't being raised. We could ask her, but I don't know. Very well. Let's assume you're right. What's the answer? To answer the court's question, Taylor's distinguishable both on its facts and on the statute that it relied on. But it is clear, it may be that it's distinguishable, it is clear that the loss has to result from the commission of the crime, and that subsequent defense, including conduct by the government, is it true that there was an equity of $125,000 in the property approximately? Don't hold me to the exact amount. And that the government put a lien on the property because of unrelated criminal conduct, and that as a result of the lien being placed on the property, there was ultimately the loss to the victim? Yes, with the qualification. The $125,000 contention, that that much equity, that's the defendant's contention. There was no finding with respect to that. The government did not dispute that at the district court level, but that's because probation in the U.S. Probation Office said that there was $172,000 worth of loss. Now, with respect to Blitz and with respect to Taylor. Wasn't there an addendum to the pre-sentence report where they ultimately agreed with the defendant? I believe they characterized the defendant's position as being fair, but did not necessarily agree with it. Didn't they change their guideline calculation? They did change their guideline calculation. Right, so they agreed with it. With respect to Tyler, that case, Your Honor. Forget about trying to distinguish it on the fact that it involved Timber and the name was Tyler. I'm just trying to, the bottom line is the holding is that it has to result, the loss has to result from the commission of the crime. And she says, and you don't, not yet have you answered this, except to corroborate her argument, that the loss resulted from the fact that you placed a lien on that property that was unrelated to this particular crime. It was because of apparently use by her brother-in-law or brother who was involved in narcotics activity. Is that true? The loss was created by a lien after the market went down. However, this court has held several different times that a loss, that restitution award is valid and has affirmed restitution awards where a loss has been one step removed from. I may be in short circuit this. The question is whether or not the district judge adequately addressed the dispute as to what to do about restitution, and as I read the record, he did not. Very well, Your Honor, and I just point the court to. What's very well? Is Judge Fletcher correct? I disagree and the government disagrees with the court's opinion, and I can point the court to specific portions of the record where I think. I read every bit of it. Very well. You can make me read it again, but I read it. I think Rito does not require that the district court go into a long. Sure, the district court should have or could have. That's all true, but how are we supposed to review his decision when he doesn't give any reasons? Let's assume, I assume that yes, he rejected her argument, but we don't know why, and from everything you said, I would say that it was erroneous. Why shouldn't he tell us in some way? Yes, Your Honor. The issue was briefed by the parties. It was also addressed in the PSR. It was also addressed in the addendum to the PSR. The court, after ten pages of transcript going through the entire record, going through each of those documents, indicates that one mortgage company did lose $172,000, and that's an excerpt from record page number nine, then addresses the guidelines issue. And as Your Honor pointed out, agreed with the government with respect to the guidelines issue of $172,000. This is my understanding. The district judge, he articulates her claim, one among others, that the financial losses are not the defendant's fault. That's at page 12 of the excerpts of the record. And then he says that although the extent of the loss is a debatable point, I'm not going to spend too long in the debate because I feel I'll be sentencing outside the guidelines anyway. I understand what he was doing. He was saying, look, we've been turned into bookkeepers. Whether we're going to follow the guidelines or not, we have to go through all of this calculated and everything. But I'm not spending too much time on calculating this because I know very well in my head I'm only going to give a year, a day rather, one day on each of these counts. So he doesn't even really, it's obvious that it wasn't a careful and thought-out decision. And then he relies on that presumably, I don't know, when he gets to the issue of restitution. I think that's a fair characterization. Now, could we sitting here now today have looked at an opinion on this issue or more? Don't be afraid of this. Judge Wu is a very careful, conscientious judge. And if it goes back for him to think about whether or not this is the right amount, he'll think about it carefully. I agree, Your Honor. Don't worry about fighting this. This is chicken feed. I want to come back to the sentencing. That's the issue that's really the troublesome issue. I mean, that's the focus of what's going on here. Yes, Your Honor. It's clear from that transcript of the sentencing proceeding that left to his own devices, Judge Wu would not have given two years. He says, I'd give one. And then it shows up two in the judgment, of course, because he's always looked back at the statute and there it is, two years, which means that you have accomplished by adding these counts, you put in a mandatory minimum, you've tied the hands of the judges, you turn an ordinary case of pretty innocuous forgery that goes as a small part of an overall crime into a mandatory minimum. I just don't see – I'm kind of going back to what Judge Crummett said at the beginning. You're piling on here. I don't see why it was necessary or even appropriate for the U.S. Attorney's Office to turn this into a mandatory minimum case. I understand the temptation. My law clerks, and I get four of them every year who got into practice, and they want to do good in the world, good as they see it, and I always advise them to go into the U.S. Attorney's Office or the Prosecutor's Office because they have the chance to do justice because you guys hold almost all of the cards. But that means it's your job to play them fairly. Yes, Your Honor. And with that, Your Honor, I would just say four months before trial and four months before we went to the grand jury with the first superseding indictment, blicks came out. We already were armed with 1028A, and blicks came out stating that a signature in relation to a wire fraud is an aggravated identity theft when that signature is forged. The plain language of the statute cannot be more clear. Blicks cannot be more clear. Forging, it says unequivocally. You're telling me things that I know very well. I understand perfectly what you're saying. I'm not sure you understand what I'm saying. I think I do, Your Honor. Because you can do something doesn't mean that you should do it. Yes, Your Honor. In this case, we're talking about millions of dollars. We're talking about 75-month low-end guideline range in the government's position, and a two-year sentence in this case. And mistrust of the sentencing ability of the judge. That's not the government's position. I mean, we can go back and forth, and I will, Your Honor, but I think the government's position is if we're going to trial on a case, we want to go to trial making sure that we have the charges that are appropriate, that we can lawfully and know we can prove beyond a reasonable doubt. And I think that's what the government did in this case. And you could have probably charged a RICO case if there was one that you didn't, under your theory. Yes, Your Honor. With all of that, I'd just add that even if there was any kind of error in the first superseding indictment, that error is not so clear and obvious that the district court judge should have, in response, raised an objection to it in absence of the defendants. And so under plain error review, the court should affirm. And also, Your Honor, with respect to the restitution. Her claim is not really, I mean, the way it's worded is this is a defect in the indictment. The real argument here is not some defect in an indictment where the evidence is otherwise sufficient. Her argument is that she's doing a mandatory minimum sentence for two years. That's not a crime. That may be right or wrong, but certainly you would agree that that would fit into plain error. If somebody was serving two years in jail for conduct which wasn't a crime, if she's right. I mean, I believe that plain error review here applies, Your Honor. Yes, but wouldn't it be plain error that someone was sitting in jail for two years for conduct that wasn't a crime? In the literal sense, yes, Your Honor. With respect to the legal sense, too. Yes, Your Honor. With respect to the second issue, the restitution issue, I'd just add that I believe it wasn't addressed in my briefs. But plain error is applicable there as well. There was no objection to the restitution order. I don't understand. She raised the argument. The judge articulated the argument. It's discussed in the PSR and the addendum. After the sentence imposed, you should say, I take an exception. I mean, haven't we done away with this even with respect to the admissibility of evidence? It's enough that you raised the issue. You have to take an exception after the judge rules. Renewed objection at the sentencing hearing is the government's position that the plain, with, in absence of that, the plain error. And you want us to consider the plain argument, the plain error argument, even though you've not raised it in your brief? Yes, Your Honor. I don't think that that's. And you say that we should not consider an argument because she hasn't raised it in her brief? I think you said that a little earlier. I don't recall saying that, but if. I do. Very well. The issue with that is a legal issue. The plain error rule is never waived, if not. Thank you, Your Honor. Just very briefly on the restitution. Obviously, there was an objection made to the PSR when it recommended it, and that's why there was the revised PSR. And the judge dealt with that. Just for the evidence, and Judge Wu, he did like the defendant, and he did see that she did nothing intentionally to cause any losses in this particular case. And, in fact, there was only that one loss. And, in fact, that case led to the discovery of her underlying liar loans, just because they had a wiretap where she talked to her brother about refinancing this particular property that they finally gleaned. But, and she does, to this day, still live in one of the houses involved here. So there was no massive million dollar fraud anywhere in this case. That's it. Sanchez, United States v. Sanchez, submitted for decision.
judges: Korman, Farris, Fletcher